**ASSOCIATES INVESTMENT COMPANY,**
Appellant,

**v.**

**Niles B. COBB, Appellee.**

No. 6684.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 31, 1964.

Stephenson, Stephenson & Thompson, Orange, for appellant.

Louis Dugas, Jr., Orange, for appellee.

PARKER, Justice.

Niles B. Cobb purchased an F–700 Ford truck and an F–600 truck paying part cash for each, with notes for the remainder of the purchase price evidenced by separate contracts on each truck, financed by Associates Investment Company. Cobb became delinquent in his monthly payments on both trucks. Associates Investment Company peacefully repossessed them. Suit was filed by Niles B. Cobb against Associates Investment Company alleging that he made tender of payment for both trucks before defendant, Associates Investment Company, had lost control or possession thereof; that Associates Investment Company refused the tender and converted the trucks to its own use. Plaintiff Cobb sued for the difference between the market value of the trucks at the time of conversion less the amount he owed Associates, for the actual damages by reason of loss of use of the trucks after their conversion and for exemplary damages. Cobb abandoned any cause of action as to the F–600 truck because evidence of tender was limited to the F–700. The jury answered all issues in favor of Cobb as to the F–700 truck. Associates Investment Company will be referred to as "Associates" or appellant, and Cobb will be referred to as appellee or as "Cobb".

Appellant's point of error No. 1 is there was no evidence to justify the submission of Special Issue No. 1. Special Issue No. 1 and the answer of the jury is as follows:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the plaintiff's wife tendered to the defendant, Associates Investment Company on or about November 6, 1959, the amount of money due on the indebtedness on the F–700 Ford truck while said truck was still in defendant's possession and control?

"An effective tender can be made without actually producing, exhibiting, and counting the money at the time of the offer to pay. When an offer of payment is made in good faith and the party making such offer has the money to make actual payment of the claim, and the party to whom it is offered declares that he will not accept such payment, the actual production and exhibition of the money is waived and a valid and effective tender is shown.

"Answer YES or NO.

"Answer: YES ."

The payment on the F–700 truck was due the 15th of October. It was not paid. Thereafter, an employee with Associates talked to Cobb's wife at the hospital. (Cobb had been injured in a hunting accident.) She learned that repossession of the truck was being considered by appellant. Mrs. Cobb's testimony was:

"Q. I see. What action did you take after this man came there, Mrs. Cobb?

"A. Well, I went home that afternoon and called Associates in Beaumont, and, well, I told them the condition that Niles was in and that I would try to get over there and take care of the payments that were due on both of the trucks as soon as he was able for me to get away that long and take care of it.

"Q. What was his reply, Mrs. Cobb?

"A. He told me that they couldn't accept the payment."

She further testified, referring to a subsequent conversation with Associates: (This being the offer of tender.)

"Q. What else did you do, Mrs. Cobb?

"A. I called the Associates and told them that I would like to pay the F–700 off in full, and he told me that both trucks would have to be paid off in full, that they wouldn't accept the payment of one truck.

"Q. With whom did you talk at this time?

"A. That was with Mr. Foster, and I told him that the trucks were under separate contracts, and he said that was all right, that they had to have payment in full on both of them."

This offer was made before any attempt by Associates to foreclose by private sale or otherwise. On the ability to pay, Mr. Cobb, testified as follows:

"Q. Well, actually, you've heard your wife testify that she offered to pay off this F–700. Would you have had as much as thirty-nine hundred dollars in the bank at that time in order to pay off that amount of money?

"A. Well, I can tell you how she intended to pay it off if you want to know how she intended to pay it.

"Q. No, sir, my question was: 'Would you have had the money to have done it?'

"A. Yes, sir, she had the money available if they would have accepted it, to pay it off."

When Associates refused the offer, the actual production of the money was waived. Nevertheless, the ability to pay at the time of tender must be proved. This was done. The rule announced in the following cases controls the question of tender in this case: Texas Auto Co. v. Clark, 12 S.W.2d 655 (Tex.Civ.App.1928); White v. Dennis, 220 S.W. 161, 163 (Tex.Civ.App.1920); Great Plains Life Ins. Co. v. First Nat. Bank of Lubbock, 316 S.W.2d 98, 105 (Tex.Civ.App.1958), (err. ref. n. r. e.); Poff v. Miller, 235 S.W. 570 (Tex.Com. App.1921); Haney v. Clark, 65 Tex. 93 (Tex.S.Ct.1885). Appellant's point of error No. 1 is overruled.

 Appellant's point of error No. 2 urges that the evidence was insufficient to justify the submission of Special Issue No. 1. Considering the entire record, the finding of the jury in answer to Special Issue No. 1 is not so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong. Appellant's point of error No. 2 is overruled.

Appellant's point of error No. 3 is as follows:

"The Trial Court committed error to Appellant's prejudice is submitting and rendering judgment on Special Issue No. 1 and the accompanying instruction because said instruction is erroneous in that it actually rebuts or negatives those items which in law must be defined as a part of tender."

Appellant's point of error No. 4 is as follows:

"The Trial Court committed error to Appellant's prejudice by overruling defendant's objections to the instruction concerning 'tender' and refusing to submit the definition of tender requested by defendant, Associates Investment Company."

Appellant tendered a definition of the word "tender", to-wit:

"With respect to the term 'tender' as used in the charge, you are instructed that in order to make a valid tender, the thing to be tendered must be actually produced and offered to the party entitled thereto and that the tenderer must place the money or property in such position that his control over it is relinquished for a sufficient time to enable the tenderee, if he desires, to reduce it to possession by merely reaching out and laying hold of the money or thing."

Since there was evidence that tender was made by appellee and refused by appellant, the definition offered was erroneous because of the rules of law hereinbefore set forth in disposing of Point 1.

Appellant's points of error Nos. 3 and 4 are overruled.

■■ Appellant's point of error No. 5 is that there was no evidence to justify the submission of Special Issue No. 3 which was submitted to the jury as follows:

"If you have answered Special Issues Nos. 1 and 2 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that defendant, Associates Investment Company, its agents, servants or employees, converted the F–700 Ford truck belonging to the plaintiff on or about November 6, 1959?

"I charge you that if you have answered Special Issues Nos. 1 and 2 'yes', that plaintiff, Niles B. Cobb, was entitled to dominion, ownership, and control of the F–700 Ford truck as of the time of defendant's refusal as a matter of law. With this in mind, I charge you that by the term 'conversion' as used in this issue is meant the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the exercise of the same rights by the owner, either permanently or for an indefinite time.

"Answer 'Yes' or 'No'.

"ANSWER: Yes ."

By its answers to Special Issues 1 and 2, the jury found that Mrs. Cobb tendered to the appellant the amount of money owed on the F–700 truck while said truck was still in Associates' possession and control, which tender was refused by Associates on or about November 6, 1959. Considering such jury findings, together with the undisputed fact that Associates sold this truck to another person, there was a conversion of the truck by Associates as a matter of law. Lyon v. Wood, 363 S.W.2d 179, 181 (Tex.Civ.App.1962); Poff v. Miller, supra; Texas Auto Co. v. Clark, supra. Appellant's point of error No. 5 is overruled. Likewise, appellant's point of error No. 6 where the claimed error is that there was insufficient evidence to justify the submission of Special Issue No. 3 is overruled.

In re King's Estate, 100 Tex. 662, 663, 244 S.W.2d 660, 661 (1951). However, appellant's point of error No. 7 asserts error in submitting and rendering judgment on the submission of Special Issue No. 3 and its accompanying instruction for the reason that same is an erroneous instruction as a matter of law and a general charge. This Issue No. 3 should not have been given. It was not an issue of fact to be submitted to the jury. Special Issues Nos. 1 and 2 were both answered "yes" and resolved the disputed fact issues on conversion. Although appellant's point of error No. 7 correctly contends that such issue should not have been given, no prejudice to appellant is apparent. The error did not amount to such a denial of the rights of appellant "as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Under Rule 434, Texas Rules of Civil Procedure, point of error No. 7 is overruled.

In answer to Special Issue No. 6 the jury found that Cobb sustained actual damages by reason of loss of use of the F–700 truck. Appellant's point of error No. 8 that there was no evidence to justify the submission of such issue is overruled. Considering the entire record, appellant's point of error No. 9 that the evidence was insufficient to justify the submission of Special Issue No. 6 is overruled.

Appellant's point of error No. 10 complains of error in submitting Special Issue No. 6 for the reason that it does not submit a legal measure of damages because of the erroneous definition of the term "actual damages". There is no definition of the term "actual damages" in Special Issue No. 6. Point of error No. 10 is overruled.

Appellant's point of error No. 11 is that the trial court committed error in submitting and rendering judgment on Special Issue No. 7 for the reason that the defendant as a matter of law had the right to foreclose its lien and is not liable to the plaintiff for the loss of use of the vehicle. Although appellant had a right to foreclose its lien when the payments were in default, it lost its right so to do when appellee made tender of payment which was refused by appellant. Point of error No. 11 is overruled.

Point of error No. 12 is as follows:

"The Trial Court committed error to Appellant's prejudice in submitting and rendering judgment on Special Issue No. 7 because the accompanying instruction is a general charge and a comment on the weight of the evidence."

Conditioned upon the jury's findings that the plaintiff, Niles B. Cobb, sustained actual damages by reason of loss of use of the F–700, proximately caused by defendant's conversion of such truck, Special Issue No. 7 was submitted as follows:

"SPECIAL ISSUE NO. 7

"What do you find from a preponderance of the evidence to be the sum of money, if paid now in cash, that would fairly and reasonably compensate the plaintiff, Niles B. Cobb, for actual damages sustained by him by reason of loss of the use of the F–700?

"In awarding damages, if any, under this issue, you may consider the damages, if any, sustained by Niles B. Cobb by reason of loss of use of the F–700 for a period of 440 working days after the date of the conversion, if any, which were proximately caused by the conversion, if any.

"Answer by stating the amount if any, in dollars and cents, or 'None'.

"ANSWER: $2500.00 ."

By this instruction, the jury was advised there were 440 working days after the date of the conversion. This invaded the prov-

ince of the jury and is upon the weight of the evidence. In fixing damages it is erroneous to fix a rate per day for loss of the use of the truck and multiply it by the number of days. Block Motor Co. v. Melia, 247 S.W. 666 (Tex.Civ.App.1923, wr. dismd.); Commercial Music Company v. Klag, 288 S.W.2d 168 (Tex.Civ.App.1955, n. w. h.); Byers v. Shelton, 282 S.W. 635 (Tex.Civ.App.1926, wr. dismd.). Inferentially, the jury was instructed to use such erroneous method of determining damages. The jury should have been left free to find that the loss of use of the truck was for a less period than 440 working days. So, the instruction was erroneous. Owen Development Company v. Calvert (1957) 157 Tex. 212, 302 S.W.2d 640. Point 12 is sustained.

Appellant's point of error No. 13 is that the trial court committed error to appellant's prejudice in submitting and rendering judgment on Special Issue No. 9 for the reason that there was no evidence to justify the submission of such issue on exemplary damages. In determining whether or not appellee was entitled to exemplary damages against the appellant, the court instructed the jury as follows:

"In regard to exemplary damages, you are instructed that before you can assess exemplary damages, you must believe and find from a preponderance of the evidence that in refusing the tender of payment, if any you have found, Associates Investment Company, through its agents acted and was actuated by some evil intent or with such gross negligence and disregard of the rights of plaintiff as is deemed equivalent to evil intent, and that Foster was employed in a managerial capacity at the time of refusing the tender, if any you have found, and was acting within the scope of his employment or that Associates Investment Company ratified the acts of their agent Foster."

Without passing upon whether or not such instruction was proper, there is no evidence that the appellant was actuated "by some evil intent or with such gross negligence and disregard of the rights of plaintiff as is deemed equivalent to evil intent". Appellant's point of error No. 13 is sustained. Also, appellant's point of error No. 14 contending there was insufficient evidence to submit Special Issue No. 9 to the jury is sustained.

Point of error No. 15 asserts error in the instruction of Special Issue No. 10 concerning exemplary damages.

"SPECIAL ISSUE NO. 10

"What sum of money, if paid now in cash, do you find from a preponderance of the evidence, that plaintiff is entitled to as exemplary damages?

"In awarding such damages, if any, you may consider mental distress and suffering, if any, of the plaintiff, the sense of wrong and insult, if any, to which plaintiff was subject as a result of the wrongful acts, if any. The amount to be fixed, if any, is in the sound discretion of the jury.

"Answer by stating the amount, if any, in dollars and cents, or none.

"ANSWER: $1500.00 ."

Such point of error is overruled. Wright Titus, Inc. v. Swafford, 133 S.W.2d 287, 294 (Tex.Civ.App.1939, dism., judgm. cor.).

Point of error No. 16 is that the trial court committed error to the appellant's prejudice in refusing to give a judgment for the defendant notwithstanding the verdict of the jury. Point of error No. 16 is overruled, except as to exemplary damages.

Judgment is reversed and the cause remanded for trial.